**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT ROBINSON, as Independent Administrator of the Estate of CORY ULMER, Deceased, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 25-cv-06643 |
| COOK COUNTY SHERIFF, *et al.* | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT RAJKOWSKI'S MOTION TO DISMISS**

Defendant Officer Rajkowski moves under Fed. R. Civ. P. 12(b)(6) to dismiss all claims against him in Plaintiff's Complaint. Dkt. 63. For the reasons stated below, Plaintiff respectfully requests that this Court deny Rajkowski's motion.

**BACKGROUND**

Plaintiff's Complaint asserts claims against the Cook County, the Cook County Sheriff, numerous correctional officers (including Defendant Officer Rajkowski), and medical staff at Cermak Health Services arising from the death of Cory Ulmer while he was in custody at the Cook County Jail in June 2024. See Dkt. 1. Ulmer, a pretrial detainee, died after being subjected to prolonged periods of shackling, two use-of-force incidents, and the administration of an intramuscular sedative. The Complaint alleges multiple Fourteenth Amendment violations, including excessive force, failure to protect and intervene, and denial of adequate medical care, as well as state-law wrongful death and survival claims and a *Monell* claim against the Sheriff.

Rajkowski's Fed. R. Civ. P. Rule 12(b)(6) motion to dismiss contends that the Complaint fails to plead facts showing his personal involvement in any constitutional violation. Dkt. 63 at 2. He characterizes these allegations as limited to the application of leg shackles after Ulmer attempted to leave his cell, helping transport Ulmer to the emergency room, and assisting medical

staff. *Id*. at 2–3. Rajkowski argues that these actions were objectively reasonable as a matter of law and that the Complaint relies on impermissible "group pleading" for any other allegations. *Id*. at 1–2. Rajkowski also asserts an affirmative defense of qualified immunity and asks this Court to decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. But the Complaint plausibly alleges Rajkowski's participation in restraining and transporting Ulmer, his participation and failure to intervene during the use of excessive force, his objectively unreasonable response to Ulmer's medical emergency, and his role in enforcing punitive conditions of confinement. At this procedural juncture, Rajkowski's motion to dismiss should be denied.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint needs only to plead a plausible claim, after which "a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (quoting *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc*., 40 F.3d 247, 251 (7th Cir. 1994)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order. *Chapman v. Yellow Cab Coop*., 875 F.3d 846, 848 (7th Cir. 2017).

## ARGUMENT

### I. Plaintiff alleges sufficient individualized allegations against Rajkowski to satisfy notice-pleading requirements.

Rajkowski's motion presents an incomplete and selective account of the allegations against him. See Dkt. 63 at 3. The Complaint alleges that Rajkowski was among the first officers to respond after Sgt. Reyes radioed for assistance and ordered that Ulmer be taken to Cermak. Dkt.

1 at ¶ 90. It further alleges that Rajkowski assisted in shackling Ulmer's legs and dragging him to the emergency room. *Id*. ¶ 92. Rajkowski is also identified as one of the five officers who assisted medical staff during the approximately thirty-minute period between the 9-1-1 call and the arrival of CFD paramedics. *Id*. ¶ 111. Despite these allegations, Rajkowski contends that the Complaint provides insufficient notice of the "particular conduct alleged against" him and that the claims involving him do not "suggest wrongdoing." Dkt. 63 at 4–5. That contention ignores the Complaint's allegation that Rajkowski was present for, and therefore personally involved in, the beating Ulmer received in Cermak during the approximately twenty-minute period between 3:18 p.m. and 3:39 p.m. on June 21, 2024.

In support of his impermissible group-pleading argument, Rajkowski relies on *Watkins v. South Suburban Major Crimes Task Force*, No. 24 C 3555, 2025 U.S. Dist. LEXIS 74648, at *12–13 (N.D. Ill. Apr. 18, 2025). But this Court later rejected the same argument in a subsequent opinion denying the defendants' motion to dismiss the plaintiff's second amended complaint. *See Watkins v. South Suburban Major Crimes Task Force*, 2025 WL 2761226, at *2–4 (N.D. Ill. Sept. 26, 2025). There, as here, the defendants "isolate[d] and focus[ed] on the paragraphs that identify them individually and argue[d] that the conduct alleged in those specific paragraphs fail[ed] to state any wrongdoing." *Id*. at *2. The Court rejected that approach and held that individual and collective allegations must be read in conjunction. *Id*. The same reasoning applies here. Rajkowski "does not have to speculate as to which allegations pertain to [him]" because the Complaint identifies which counts are asserted against him. *Id.* at *3. Plaintiff was not required to plead "one-by-one that each Defendant witnessed or participated in the attack and failed to come to his aid." *Johnson v. Vill. of Maywood*, No. 12 C 3014, 2012 WL 5862756, at *2 (N.D. Ill. Nov. 19, 2012).

When the allegations are read sensibly and as a whole, there is no genuine uncertainty as to who is responsible for what, particularly where the correctional officers are alleged to have acted jointly. *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2013). Plaintiff has done far more than merely name Rajkowski in the caption. *Earl v. Howard*, No. 17 C 0243, 2017 WL 2779797, at *3 (N.D. Ill. June 27, 2017). The Complaint satisfies the requirements of Fed. R. Civ. P. 8 and provides Rajkowski with fair notice of the Fourteenth Amendment violations alleged to have occurred in the 36 hours before Ulmer's death. Rajkowski's motion to dismiss should therefore be denied.

## II. Plaintiff plausibly alleges an excessive force claim against Rajkowski.

For a pretrial detainee, excessive force turns on objective reasonableness under the circumstances. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Relevant considerations include the relationship between the need for force and the amount used, the extent of injury, efforts to temper force, and whether the detainee was resisting. *Id*. at 397. The Complaint alleges that Rajkowski helped restrain Ulmer and "drag" him approximately twenty feet across concrete into the emergency room area. Dkt. 1 at ¶ 92. At the pleading stage, dragging a restrained detainee across concrete is not categorically benign, particularly where the detainee required medical attention. *See, e.g., Coleman v. City of Chicago*, No. 12 C 10061, 2015 WL 8601702, at *3 (N.D. Ill. Dec. 14, 2015) ("no question" that dragging a non-resisting detainee along the floor by handcuffs "constituted intentional use of force"). Whether that conduct was objectively reasonable depends on fact-intensive considerations that cannot be resolved on a motion to dismiss, including, for example, Ulmer's physical condition, the availability of less harmful alternatives such as a wheelchair or gurney, and the manner and duration of the dragging.

Rajkowski's characterization disregards the Complaint's allegation that Ulmer was moved to Cermak so officers could beat him outside the view of surveillance cameras. *Id*. ¶¶ 72–73, 131,

329. Sgt. Reyes deactivated his body-worn camera once they reached the medical area, and investigatory reports are unclear whether other videos exist. *Id.* ¶¶ 94-96, 101-02. In the pleading stage, Plaintiff cannot be expected to specify every single strike and blow his decedent suffered; the Defendants, and not Plaintiff, are in possession of this knowledge and can admit or deny facts accordingly. *See Wilson v. City of Chicago*, No. 09 C 2477, 2009 WL 3242300, at *2 (N.D. Ill. Oct. 7, 2009) (if two police officers arrest a person, and after handcuffing him and placing him on the ground, one officer kicks him in the head, it would be "patently unfair and illogical" to force that person to identify which of the two officers kicked him before taking discovery).

Rajkowski further contends that Ulmer's injuries from shackling were *de minimis*. Dkt. 63 at 5. Death is not a *de minimis* injury, and Ulmer's death was ruled a homicide by the Cook County Medical Examiner. Dkt. 1 at ¶ 5. The autopsy documented lacerations and contusions to Ulmer's wrists and ankles, as well as additional abrasions and soft-tissue hemorrhages to his knees, shoulders, abdomen, and thigh. *Id*. ¶¶ 122, 127, 213, 224. Rajkowski's reliance on Eighth Amendment precedent in *Outlaw v. Newkirk*, 259 F.3d 833, 839 (7th Cir. 2001) in support of this point is misplaced. Under the Fourteenth Amendment, pretrial detainees "cannot be punished at all." *Kingsley*, 576 U.S. at 400. Even under the Eighth Amendment, the inquiry is not "the extent of the injury" but rather "the nature of the force," meaning whether the force was "nontrivial" and "was applied … maliciously and sadistically to cause harm." *Wilkins v. Gaddy,* 559 U.S. 34, 39 (2010); *see also Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (blows to inmate which caused bruising, swelling, loosened teeth, and cracked dental plate not *de minimis* for Eighth Amendment purposes; more serious injury not required); *see also Logan v. Ramirez,* No. 21 C 0131, 2022 WL 523104, at *3 (N.D. Ill. Feb. 22, 2022) (allegations about shackles applied as punishment that cut

detainee's skin were sufficient to raise inference that officers used excessive force or failed to intervene and survive motion to dismiss).

The "children's game of pin the tail on the donkey" that Rajkowski argues for is not a "proper model for constitutional tort law." *Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 821 (7th Cir. 2009) (quoting *Billman v. Ind. Dep't of Corr*., 56 F.3d 785, 789–90 (7th Cir. 1995). Accepting the well-pleaded allegations as true, Plaintiff has plausibly alleged a significant likelihood that Rajkowski used objectively unreasonable force against a restrained pretrial detainee. Rajkowski's motion to dismiss Count I should therefore be denied.

## III. Rajkowski is liable for failure-to-intervene and failure-to-protect claims.

Rajkowski's argument for dismissal of Count II apparently rests on a speculative narrative that he dragged Ulmer into the emergency room, departed while other officers beat him, and then returned only after 9-1-1 was called to assist with medical care. See Dkt. 63 at 7. That account is not supported by the pleadings and, in any event, relies on factual assumptions that cannot be resolved at the motion-to-dismiss stage. Rajkowski's renewed "group pleading" objection also fares no better here. *Id.* The Complaint identifies Rajkowski by name as one of the five officers who assisted medical staff after 911 was called. Dkt. 1 ¶ 111. Rajkowski further contends that Plaintiff has failed to state either a failure-to-protect claim under *Kemp v. Fulton Cnty.*, 27 F.4th 491, 496 (7th Cir. 2022), or a failure-to-intervene claim, though he notably cites no authority governing the latter. Rajkowski's argument that he cannot be held liable because the Complaint does not detail his exact actions shows why both theories of liability are necessary.

With respect to failure to protect, the Complaint alleges that it was common knowledge among Defendants that use-of-force incidents in Cermak would not be captured on video. Dkt. 1 ¶¶ 72–73. Count II further alleges that Rajkowski knew that other officers were using or were

about to use excessive force against Ulmer. Id. ¶ 147. Taken as true, these allegations plausibly establish that Rajkowski was on notice of a substantial risk of serious harm to a mentally ill pretrial detainee who was being "dragged" into that environment. Although failure-to-protect claims often arise in the context of detainee-on-detainee violence, the Due Process Clause also imposes a duty to protect detainees from excessive force by fellow officers, even if a defendant leaves the room as it is occurring. *Medley v. Turner*, 869 F. Supp. 567, 576 (N.D. Ill. 1994); *see also Kemp*, 27 F.4th at 494 (recognizing detainees' right to be free from "violence behind bars").

In contrast, the failure to intervene claim alleges Rajkowski remained present during the use-of-force incident and did not stop the other correctional officers from using excessive force on Ulmer. The Seventh Circuit has long held that "it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). Omissions as well as actions may violate civil rights. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Even if Rajkowski believed Ulmer was being taken to the emergency room for medical care, he could still be liable for failing to intervene once excessive force began. *Sanchez v. City of Chicago*, 700 F.3d 919, 926 (7th Cir. 2012).

Based on the allegations, it is more than plausible that Rajkowski had an opportunity to intervene or protect Ulmer, and his precise location, knowledge, and opportunity are disputed factual matters that must be resolved through discovery. Count II should not be dismissed.

## IV. Rajkowski's delay/denial of medical care to Ulmer was objectively unreasonable.

Rajkowski argues that Count III should be dismissed because he was "in a room full of medical staff" when Ulmer suffered a medical emergency and therefore could not have acted unreasonably. Dkt. 63 at 8. The Complaint alleges otherwise. It pleads that after Ulmer was beaten,

his condition visibly deteriorated, he lost consciousness, and he began foaming at the mouth, yet no defendant summoned emergency care. Dkt. 1 at ¶ 106. At a minimum, Rajkowski could have called a doctor, checked Ulmer's vital signs, called 9-1-1 sooner, or alerted others to the change in Ulmer's condition. Whether Rajkowski reasonably relied on medical staff or instead ignored obvious signs of a medical emergency is a fact-bound inquiry that cannot be resolved at this stage. Jail officials may be liable where they have reason to know that medical staff are failing to provide adequate care. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018).

Rajkowski's reliance on Eighth Amendment precedent does not compel dismissal. In *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010), a case involving a toothache, the court permitted deference to medical professionals only so long as the officer did not ignore the detainee. Likewise, *Johnson v. Doughty*, 433 F.3d 1001, 1011–12 (7th Cir. 2006), recognized that deference is inappropriate where it would be evident to a layperson that the treatment provided is inadequate (when analyzing allegedly inadequate treatment of a hernia). The Complaint alleges precisely that kind of obvious medical distress here. *Smith v. Whitsel*, 134 F.4th 962, 966 (7th Cir. 2025).

That Rajkowski allegedly eventually assisted medical staff does not absolve him of liability for participating in the events that precipitated the medical crisis or for failing to intervene when Ulmer's condition rapidly worsened. Whether Rajkowski's conduct in the emergency room was reasonable, whether he contributed to a delay in care, and what he observed and did are disputed factual issues inappropriate for resolution at the pleading stage. Plaintiff has stated a plausible denial-of-medical-care claim, and Count III should not be dismissed.

## V. Plaintiff has adequately pleaded a conditions-of-confinement claim.

Rajkowski devotes only two paragraphs to challenging Count IV, which alleges that Ulmer was subjected to punishment without due process based on the conditions of his confinement. Dkt.

63 at 9. He cites no legal authority, and the Court may reject the argument on that basis alone. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (noting that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"); *see also Tex. Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 413 (N.D. Ill. 2021) (it is "well-settled rule that failure to develop a legal argument in an opening brief results in the argument's waiver.")

Even if the Court reaches the merits, Rajkowski's "implausibility" framing misapplies the governing standard. Rajkowski asserts that Count IV fails because he did not make housing determinations or design Ulmer's cell. Dkt. 63 at 9. But a conditions-of-confinement claim against an officer does not require allegations that he controlled facility design or housing assignments. When the State takes a person into custody, it assumes responsibility for his safety and basic human needs. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). A pretrial condition constitutes punishment if it is imposed for that purpose or if it is not reasonably related to a legitimate governmental objective. *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quoting *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979)). Conditions-of-confinement claims often arise from "a mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) (quoting *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013)). The Complaint alleges that Ulmer was subjected to prolonged restraint use, including an extended period where he was shackled to a bench, as punishment for defecating in his cell, a response that further deprived him of basic human needs, including the ability to sleep. Dkt. 1 at ¶¶ 60-63, 176. Denying hydration, sanitation, and rest to a pretrial detainee is not reasonably related to any legitimate governmental objective, nor is shackling the detainee for many hours when he is alone in a secure bullpen cell. Even if

these conditions were not imposed as punishment, they were objectively unreasonable under the Fourteenth Amendment. *Hardeman*, 933 F.3d at 823.

Sgt. Reyes' body-worn camera video shows that Rajkowski responded to assist just seconds after officers tackled Ulmer to the floor outside the bullpen. Dkt. 1 at ¶ 90. Rajkowski's immediate response permits the reasonable inference that he was in the vicinity of the bullpens and involved in the custodial operations at Cermak at the time Ulmer was held in those conditions.[1] It also permits the reasonable inference that Rajkowski was one of the officers involved in, or at least aware of, the decision to punitively shackle Ulmer and deny him access to bathroom facilities, water, and toiletries for extended periods in the 36 hours before his death. *Id.* ¶¶ 174-78. Plaintiff has only named the officers who are alleged to have quickly arrived on scene in Count IV; officers whose arrival was delayed, such as Defendants Kavanaugh, Novak, and Preto, are not currently named in this count. *Id.* ¶ 100.

If Rajkowski were assigned to the Cermak bullpen area, then he had a duty to ensure that Ulmer had adequate food, water, access to sanitation facilities and hygienic materials, and that he was not punitively shackled for extended periods in a manner that would have made sleep impossible. Rajkowski's motion to dismiss Count IV should be denied.

## VI. Rajkowski's participation in numerous constitutional violations precludes the application of qualified immunity.

Rajkowski next advances a confusing and internally inconsistent assertion of qualified immunity. Dkt. 63 at 9–10. He cites cases describing the general framework for qualified-immunity analysis but does not meaningfully apply either prong of that framework to the

[1] Before filing the Complaint, undersigned counsel sought, *inter alia*, staffing assignments on Division 8 and Cermak on June 20 and 21, 2024, via Freedom of Information Act Request. The Sheriff provided rosters with all information redacted and claimed it was exempted under 5 ILCS 140/7(d)(v, vi), 7(d)(e), and 7(e). The Sheriff also denied Plaintiff's requests for body-worn camera and surveillance video.

Complaint's allegations. Instead, he alternates between arguing that the Complaint fails to allege any constitutional violation at all and asserting that, even if it does, he is nevertheless entitled to qualified immunity. *Id*. He never clearly identifies which prong of the analysis he believes entitles him to dismissal, nor does he explain how the pleaded facts fail under either inquiry.

Citing *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014), Rajkowski recites the two-step qualified-immunity inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation, and (2) whether the right at issue was clearly established at the time of the conduct. Dkt. 63 at 10. But *Gibbs* addresses entitlement to qualified immunity at the summary judgment stage, where "the defendant official is entitled to summary judgment" if either prong is not satisfied. *Gibbs*, 755 F.3d at 537. Asserting qualified immunity through a Rule 12(b)(6) motion subjects a defendant to a more demanding standard than would apply at summary judgment. *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018). While qualified immunity is generally a "burden-flipping" affirmative defense, at the motion-to-dismiss stage, a complaint doesn't have to defeat an affirmative defense. *Costa v. Ramaiah*, 689 F. Supp. 3d 553, 576 (N.D. Ill. 2023). "In the tug-of-war between plaintiff-friendly pleading standards and defendant-friendly qualified immunity, ordinary pleading standards have the upper hand." *Id.* at 577. Even summary judgment is disfavored in use-of-force cases when "the one against whom force was used has died, because the witness most likely to contradict the officer's testimony—the victim—cannot testify." *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 862 (7th Cir. 2010).

To the extent Rajkowski's argument can be understood as addressing the "clearly established" prong, it fails. A plaintiff may satisfy that requirement by identifying either a closely analogous case or conduct so egregious that no reasonable officer could believe it lawful. *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009). The constitutional rights at issue have been

established by numerous Supreme Court and Seventh Circuit cases before June 2024. As argued *supra*, the Fourteenth Amendment and corresponding case law protect detainees' right to be free from the use of excessive force, including excessive restraint, and impose duties on officers to intervene, protect, respond reasonably to serious medical concerns, and provide for basic human needs. *See also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (correctional officers not entitled to qualified immunity for handcuffing an inmate for seven hours while denying him water and bathroom breaks); *Abdullahi v. City of Madison*, 423 F.3d 763, 775 (7th Cir. 2005) (plaintiff "certainly alleged violation of a valid constitutional right" involving application of deadly force to arrestee lying prone on the ground, precluding qualified immunity for officer who applied deadly pressure and nearby officers who failed to intervene); *Hardeman*, 933 F.3d at 824 (denying qualified immunity after three days without water at jail, causing inmates to have insufficient water to shower, to drink, to take medicines, and to brush their teeth, were objectively unreasonable, and "dehydration-induced weakness and illness" transformed "what might otherwise have been a mere inconvenience into a problem of constitutional magnitude"); *Whitsel*, 134 F. 4th at 967 (officer who witnessed escalating medical symptoms but never saw medical staff administering care or informed them of her condition not entitled to qualified immunity); *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (any officer who was not directly responsible for a beating "was idly standing by," and a plaintiff can recover if he can show at trial that an officer attacked him while another officer ignored a realistic opportunity to intervene).

Further, each individual constitutional violation detailed in the Complaint—denying Ulmer basic human necessities, shackling him for many hours, beating him while he was unarmed and restrained, failing to ensure he received medical care—was so egregious that no reasonable officer could have believed it was lawful. Taken together, the actions of Rajkowski and the other

defendants are unconscionable and deprived Ulmer of his life "without due process of the law." U.S. Const. amend. XIV, § 1. Rajkowski's individual liability for his participation in this homicide cannot be resolved on the pleadings. Qualified immunity must be analyzed individually for each defendant, particularly where their alleged conduct and knowledge differ. *Est. of Williams by Rose v. Cline*, 902 F.3d 643, 651 (7th Cir. 2018). On the current record, Rajkowski's assertion of qualified immunity does not warrant dismissal.

Rajkowski's request that this court dismiss "all claims" against him with prejudice is also unclear as to whether it includes state-law claims. Qualified immunity is a federal doctrine that does not bar Illinois wrongful death or survival claims, which are governed by distinct state-law immunities and standards that Rajkowski omits from his motion. *See Johnson v. Fankell*, 520 U.S. 911, 919 (1997) ("the ultimate purpose of qualified immunity is to protect the State and its officials from overenforcement of federal rights"). Rajkowski's assertion of qualified immunity does not warrant dismissal of the federal or state-law claims Complaint at this stage and should be denied.

**VII. Both the state and federal law claims against Rajkowski should stand.**

Rajkowski's final argument is that Plaintiff's state-law claims must be dismissed because Plaintiff has allegedly failed to plead any viable federal claims against him. Dkt. 63 at 10. That argument is unavailing. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and § 1343, and Plaintiff's state-law claims arise from the same nucleus of operative facts as the federal claims asserted against Rajkowski and his co-defendants. Even if the Court were to dismiss the federal claims against Rajkowski alone, it would retain supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy. *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008). Under these circumstances, the presumption against exercising supplemental jurisdiction does not apply. *Doe*

*v. Bd. of Educ. of the City of Chi.*, 611 F. Supp. 3d 516, 539 (N.D. Ill. 2020). Accordingly, Rajkowski's request to dismiss the state-law claims should be denied.

**CONCLUSION**

For the foregoing reasons, Defendant Rajkowski's Motion to Dismiss should be denied in its entirety. The Complaint plausibly alleges that Rajkowski personally participated in and observed unconstitutional uses of force, failed to intervene, responded with objective unreasonableness to Ulmer's serious medical needs, and enforced or perpetuated punitive conditions of confinement in violation of the Fourteenth Amendment. Rajkowski's arguments rely on disputed factual assertions and undeveloped legal theories that cannot be resolved on a Rule 12(b)(6) motion. Accepting the well-pleaded allegations as true, Plaintiff has satisfied the federal pleading standard, and the claims against Rajkowski should proceed to discovery. In the alternative, should the Court find any pleading deficiency, including an impermissible use of "group pleading," Plaintiff respectfully requests leave to amend the Complaint pursuant to Fed. R. Civ. Pr. 15(a)(2) to clarify his allegations against Rajkowski.

Dated: December 16, 2025

Respectfully submitted,

/s/ Jesse B. Guth

Jesse B. Guth #6320722
Guth Law Office, LLC
21 S. Evergreen Ave, Suite 200-112
Arlington Heights, IL 60005
(773) 820-8218
jesse@guthlawoffice.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

Plaintiff's attorney hereby certifies that on the 16th day of December, 2025, a copy of **Plaintiff's Opposition to Defendant Rajkowski's Motion to Dismiss** was filed electronically with the Clerk of the Court for the United States District Court for the Northern District of Illinois by using the CM/ECF system and that participates in this case who are registered CM/ECF users will be served by the CM/ECF system.

Monica Burkoth (burkothm@jbltd.com)
Lisa M. McElroy (mcelroyl@jbltd.com)
JOHNSON & BELL, LTD.
33 W. Monroe St., Ste. 2700
Chicago, Illinois 60603
(312) 372-0770
*Attorneys for Defendants Cook County Sheriff, Reyes, Davis, Sprayberry, Garcia, Alvarez, Codd, Matanic, Jackson, Lesnicki, O'Hearn, Novak, Preto, Romo, Kavanaugh, Kelly, Wilks, Carr, and Hollis*

Jessica D. Ratner
(jessica.ratner@cookcountysao.org)
Assistant State's Attorney
50 West Washington, Suite 2760
Chicago, IL 60602
(312) 603-1434
*Attorney for Rajkowski*

William Ragen
(William.ragen@cookcountysao.org)
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-7944
*Attorney for Cook County d/b/a Cermak Health Services, Balawander, Colon, Haq, James, Johnson, Khan, Munoz, Omodora, Sheehan, Tawadros, and Trani*

/s/ Jesse B. Guth
Jesse B. Guth #6320722
Guth Law Office, LLC
21 S. Evergreen Ave, Suite 200-112
Arlington Heights, IL 60005
(773) 820-8218
jesse@guthlawoffice.com
Attorney for Plaintiff