**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT ROBINSON, as Independent Administrator of the Estate of CORY ULMER, deceased, Plaintiff, | ) | Case No. 1:25-cv-06643 |
| v. | ) | Hon. Andrea Wood |
| COOK COUNTY SHERIFF, et al. Defendants. | ) | Hon. Maria Valdez |

**PLAINTIFF'S STATUS REPORT REGARDING SETTLEMENT**
**AND REQUEST FOR STATUS CONFERENCE WITH COURT**

Pursuant to the Court's July 31, 2026 Minute Order (Dkt. 122), Plaintiff ROBERT ROBINSON, as Independent Administrator of the Estate of CORY ULMER, deceased, respectfully submits this Status Report.[1]

On August 28, the parties jointly filed a status report to advise Magistrate Judge Valdez that they were "working cooperatively to finalize the written settlement agreement and related dismissal documents," that Plaintiff had already provided proposed revisions, and that the parties were continuing to confer regarding the remaining terms and mechanics. Dkt. 123 ¶ 3. The parties further represented that additional County approval and payment processing would occur after the September 23 Subcommittee meeting, including consideration by the Finance Committee and Cook County Board in October. *Id.* ¶¶ 4–5.

Nearly a month has now passed since that joint filing, yet Defendants still have not provided a revised settlement agreement or counter-language addressing the revisions that Plaintiff

---

[1] The parties have previously filed joint status reports, although obtaining timely signatures from all Defendants has repeatedly required undersigned counsel to finalize those filings late in the evening. Plaintiff advised all counsel on September 23 and again on September 25 that, absent a joint report accurately reflecting the parties' competing positions, Plaintiff would file separately. Defendants' proposed joint report, circulated September 25, does not address the disputed issues described herein.

sent on August 26. Counsel for the Sheriff informed Plaintiff today that the anticipated October approval and payment schedule has been lost and the matter has been pushed into November 2026.

Even though the parties agreed to a settlement in principle in July 2026, Defendants did not circulate their initial *proposed* release and dismissal stipulation until August 17, 2026. The "standard settlement agreement and general release" that Defendants describe in their status report (Dkt. 125 ¶ 3) introduced material terms and procedural requirements that had not previously been discussed, including, *inter alia*, a unilateral and overbroad release, no definite payment deadline, and representations extending beyond Plaintiff's authority as Independent Administrator. The release was accompanied by a draft stipulation that purported to dismiss the Sheriff, the individual officers, and the medical defendants, leaving only Cook County remaining, and then contemplated dismissal of Cook County with prejudice "[o]nce the agreement is fully executed." The proposed Stipulation contains signature blocks only for Plaintiff and Cook County, through Assistant State's Attorney Lyle Henretty; none of the numerous other Defendants to be dismissed are signatories. That sequence forces the Estate to surrender its existing claims and assume substantial risk that Cook County's payment obligation may not be enforceable or timely, leaving Plaintiff to bear the consequences if the remaining approval or payment process breaks down.

Plaintiff promptly raised concerns about the procedural dismissal mechanics and enforceability of the proposed agreement, questioning whether Subcommittee approval alone was sufficient to create an enforceable County obligation before completion of the remaining Board approval process. *See* 55 ILCS 5/2-6010; *Meade v. City of Rockford*, 2015 IL App (2d) 140645, ¶¶ 32-43. Counsel for the County represented that, once the Litigation Subcommittee approved the settlement, Cook County would be "bound to pay."

Plaintiff's concern is informed by the rule that parties contracting with public entities are charged with knowledge of the limits on governmental authority and bear the risk that an agreement made without required authorization may be void and unenforceable. *See, e.g., D.S.A. Finance Corp. v. Cnty. of Cook*, 345 Ill. App. 3d 554, 562-64 (2003); *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶¶ 35-36. Nevertheless, in an effort to accommodate Defendants' request, Plaintiff sent revisions on August 26 designed to memorialize Defendants' representation within the agreement itself, provide an effective remedy if payment did not follow dismissal, limit Plaintiff's release to claims he has authority to resolve, and make the parties' obligations reciprocal. These redlines added protections for the Estate that were made necessary by terms Defendants themselves first introduced in their August 17 drafts. Plaintiff also sent Defendants a memorandum explaining the concerns behind the revisions. Throughout the last month, Plaintiff has repeatedly advised that the Estate is willing to negotiate these provisions, so long as the underlying issues are adequately addressed, and that most of the language involving procedural protections would be unnecessary if dismissal simply waited until payment.

On September 11, Defendants rejected Plaintiff's proposed revisions in their entirety and advised that their settlement documents had to be executed by 5:00 p.m. on September 25 to remain on the October Finance Committee schedule. Plaintiff requested that all counsel meet to discuss the issues and provided a second memorandum citing authority in support of Plaintiff's concerns. On September 17, counsel for all parties conferred, but Plaintiff's concerns were not resolved. At Defendants' request, Plaintiff agreed not to seek Court intervention before the September 23 Subcommittee meeting.

A month has now passed since Plaintiff sent his August 26 revisions, and Defendants still have not provided Plaintiff with a revised settlement agreement. Instead, Plaintiff has repeatedly

heard the refrain that "this is the way it is always done." But the customary practice of the Cook County State's Attorney's Office does not constitute binding precedent, nor does it justify shifting significant financial and procedural risk onto Plaintiff before there is an enforceable agreement.

Plaintiff does not presently ask the Court through this Status Report to determine whether a binding and enforceable settlement agreement exists or to adjudicate the disputed settlement terms. However, due to the length of time that has passed without meaningful movement toward resolution, and Defendants' failure to provide legal authority supporting their position despite Plaintiff's repeated requests, Plaintiff respectfully requests that the Court: (1) hold a prompt status conference; (2) deny Defendants' request to strike the October 23 status-report deadline; (3) set a date certain for execution of the settlement documents, failing which the stays will be lifted and the responsive-pleading and discovery schedule restored; and (4) permit supplemental briefing on the legal and procedural issues identified above.

This case should not remain indefinitely stayed while material settlement terms and the dismissal procedure remain unresolved. Continued delay materially prejudices Plaintiff's ability to litigate if the settlement is not consummated. The underlying events occurred in June 2024; memories continue to fade, and relevant evidence remains in the hands of Defendants and third-party custodians. Those concerns carry particular weight in a case in which Plaintiff has alleged coordinated misconduct and spoliation of evidence related to an in-custody homicide. By way of example, on August 6, 2026—just days after this Court stayed the litigation—the Illinois State Police contacted Plaintiff to ask whether it could discontinue preservation of evidence. Plaintiff immediately advised ISP that the federal litigation remained pending, that the evidence remained material, and that nothing should be destroyed or spoliated. Plaintiff does not know whether ISP had been informed that the parties had reached a settlement in principle. Regardless, Plaintiff

should not be required to continue bearing the litigation risk of an indefinite stay while Defendants delay settlement.

Plaintiff remains ready to work promptly and in good faith to complete the settlement on just, fair, and enforceable terms and respectfully requests this Court's guidance so that the parties can either bring the settlement to a prompt conclusion or resume the litigation without further unnecessary delay.

Date: September 25, 2026

Respectfully submitted,
/s/ Jesse B. Guth

Jesse B. Guth (jesse@guthlawoffice.com)
Guth Law Office, LLC
21 S. Evergreen Ave, Suite 200-112
Arlington Heights, IL 60005
(312) 529-5875
*Attorney for Plaintiff Robert Robinson, Independent Administrator of the Estate of Cory Ulmer*